## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**MATT BANKS (#116002)**                                    **CIVIL ACTION**

**VERSUS**                                                  **NO. 16-0649-JWD-EWD**

**JAMES M. LeBLANC, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 21, 2019.

                                                              _/s/ Erin Wilder-Doomes_
                                                              **ERIN WILDER-DOOMES**
                                                              **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MATT BANKS (#116002)** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-0649-JWD-EWD** |
| **JAMES M. LeBLANC, ET AL.** | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before this Court is Defendants' Motion for Judgment on the Pleadings (the "Motion") filed by defendants, James M. LeBlanc, Darrel Vannoy, Stephanie Lamartiniere, Tracy Falgout, Randy Lavespere, M.D., and Paul Toce, M.D. (collectively "Defendants"), based upon Fed. R. Civ. P. 12(c).[1]  For the reasons set forth herein, the undersigned recommends that the Motion be granted in part and denied in part.

### I.  Background

*Pro se* Plaintiff, Matt Banks ("Plaintiff"), an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, originally filed this action pursuant to 42 U.S.C. § 1983 against Secretary James M. LeBlanc ("LeBlanc"),[2] Warden Darrel Vannoy ("Vannoy"),[3] Assistant Warden Stephanie Lamartiniere ("Lamartiniere"),[4] the R.E. Barrow Treatment Center, and Chronic Illness Department[5] alleging that his constitutional rights had been and were being violated through deliberate indifference to his serious medical needs.[6]  Plaintiff thereafter filed an

---

[1] R. Doc. 36.
[2] LeBlanc is named in his individual and official capacities as "final policy maker." (R. Doc. 23, ¶¶ 33; 132).
[3] Vannoy is named in his official capacity. (R. Doc. 23, ¶¶ 33; 133).
[4] Lamartiniere is named in her individual capacity. (R. Doc 23, ¶¶ 33; 134).
[5] The R.E. Barrow Treatment Center and the Chronic Illness Department, originally named as defendants were voluntarily dismissed by means of the filing of the Second Amended and Consolidated Complaint. (R. Doc. 23, p.5; R. Doc. 22).
[6] R. Doc. 1.

Amended Complaint[7] and a Second Amended and Consolidated Complaint,[8] which supplemented and clarified his factual allegations and added the following defendants: LSP Medical Director Randy J. Lavespere ("Lavespere"),[9] Assistant Warden Tracy Falgout ("Falgout"),[10] and Dr. Paul M. Toce ("Toce").[11]

Plaintiff alleges that prison officials were deliberately indifferent to his medical needs in violation of the Eighth Amendment in treating Plaintiff's diabetes and complications associated therewith.[12] Plaintiff also asserts a claim for "ADA accommodations" based on the Americans with Disabilities Act ("ADA").[13] He seeks monetary damages and declaratory and injunctive relief.

## II. Law and Analysis

### A. Federal Rule of Civil Procedure 12(c) Standard

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Entry of judgment on the pleadings is proper if the material facts are not in dispute and the court can render judgment on the merits by looking to the substance of the pleadings and any judicially noticed facts.[14] The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6).[15]

---

[7] R. Doc. 15.
[8] R. Doc. 23.
[9] Dr. Lavespere is named in his individual and official capacities. (R. Doc. 23, ¶¶ 33; 129).
[10] Falgout is named in his individual and official capacities. (R. Doc. 23, ¶¶ 33; 130).
[11] Dr. Toce is named in his individual and official capacities. (R. Doc. 23, ¶¶ 33; 131).
[12] U.S. CONST. amend. VIII. (R. Doc. 23 ¶¶ 140-165).
[13] R. Doc. 23, ¶¶ 177-178,
[14] *Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018).
[15] *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002)).

In *Bell Atlantic Corp. v. Twombly*,[16] and *Ashcroft v. Iqbal*,[17] the Supreme Court clarified the standard of pleading that a plaintiff must meet to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[18] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[19] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" [21] "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[22]

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."[23] Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"[24] Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation,"[25] or "naked assertions [of unlawful conduct] devoid of further factual enhancement."[26] Moreover, the federal pleading rules simply require a "short and plain statement of the claim showing that the

---

[16] 550 U.S. 544 (2007)
[17] 556 U.S. 662 (2009).
[18] *Bell Atlantic Corp. v. Twombly*, *supra*, at 555.
[19] *Ashcroft v. Iqbal*, *supra*, at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*.
[20] *Id.*
[21] *Id.* at 679.
[22] *Id.* at 678 (internal quotation marks omitted).
[23] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[24] *Id.* (citation omitted).
[25] *Papasan v. Allain*, 478 U.S. 265, 286 (1986),
[26] *Ashcroft v. Iqbal*, *supra*, at 678 (internal quotation marks omitted).

4

pleader is entitled to relief."[27] The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted.[28]

### B. Plaintiff's Request for Monetary Relief against Defendants in their Official Capacities is Subject to Dismissal under the Eleventh Amendment

Plaintiff has alleged a right to monetary relief against all named Defendants, both in their official and individual capacities. With respect to Plaintiff's claims for monetary damages against Defendants LeBlanc, Vannoy, Lavespere, Falgout and Toce in their official capacities, 42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.[29] In addition, in *Hafer v. Melo*,[30] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.[31] Accordingly, the Plaintiff's § 1983 claims asserted against Defendants LeBlanc, Vannoy, Lavespere, Falgout, and Toce in their official capacities for monetary damages are subject to dismissal.

---

[27] Fed. R. Civ. P. 8(a)(2).
[28] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).
[29] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).
[30] 502 U.S. 21 (1991).
[31] *Id.* at 25.

**C. Plaintiff's Request for Monetary Relief against Defendants in their Individual Capacities, Qualified Immunity, and Requests for Declaratory and Injunctive Relief**

**1. Plaintiff's individual capacity claims for monetary damages and claims for declaratory and injunctive relief are not subject to dismissal under the Eleventh Amendment.**

In contrast, Plaintiff's § 1983 claims for monetary damages asserted against Defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state.[32] In addition to Plaintiff's claims for monetary damages, he seeks declaratory and injunctive relief. "The Eleventh Amendment does not protect state officials from claims for prospective relief when it is alleged that the state officials acted in violation of federal law," so Plaintiff's claims for injunctive relief against LeBlanc, Vannoy, Lamartiniere, Lavespere, Falgout, and Toce are not barred by the Eleventh Amendment.[33]

**2. Qualified Immunity**

Defendants have also asserted that they are entitled to qualified immunity in connection with Plaintiff's claims. Specifically, Defendants contend that Plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of Plaintiff's federal constitutional or statutory rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.[34] Taking the facts as alleged in the light most favorable to the plaintiff, the court considers whether the defendant's conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were

---

[32] *Id.* at 29.
[33] *Warnock v. Pecos Ct.*, 88 F.3d 341, 343 (5th Cir. 1996) (citing *inter alia, Ex parte Young*, 209 U.S. 123, 155-56 (1908)).
[34] *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012).

6

clearly established at the time that the violation occurred. Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. [35] This inquiry is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. While ordinarily one who pleads an affirmative defense has the burden to establish his entitlement to that defense, where a defendant pleads qualified immunity and shows he is a government official whose position involves the exercise of discretion, the plaintiff has the burden to rebut the defense by establishing that the defendant's allegedly wrongful conduct violated clearly established law.[36] To defeat the qualified immunity defense, a plaintiff's complaint must allege specific facts that, if proved, would show that the official's conduct violated clearly established constitutional or statutory rights. Although a plaintiff can file a detailed reply to address the assertion of the qualified immunity defense, that is only required if the complaint is not sufficiently detailed to create a genuine issue as to the illegality of the defendant's conduct.[37] If the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the assertion of the qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss.[38]

---

[35] 555 U.S. 223, 236 (2009)(concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-ponged analysis in a particular order – should not be "regarded as an inflexible requirement").
[36] *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997)(quotations and citations omitted).
[37] *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995)(*en banc*).
[38] *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002)(*en banc*).

### 3.  Plaintiff's remaining § 1983 claims against Vannoy and Falgout should be dismissed

Undertaking the qualified immunity analysis with respect to Plaintiff's remaining claims, Defendants' Motion should be granted in part and denied in part. First, in order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be shown to be a causal connection between the actions of the official and the constitutional violation sought to be redressed.[39] A supervisory official is not liable under § 1983 for the actions of subordinates "on any theory of vicarious liability."[40] "Rather, a plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation."[41] Thus, "[a] supervisory official may be held liable...only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."[42]

Here, based on the allegations of the Complaint, LeBlanc, Vannoy, and Falgout were in no way directly involved with the medical care rendered to Plaintiff. Plaintiff alleges that LeBlanc, Vannoy, and Falgout have "implemented and enforced policies, practices, and customs," which repudiate Plaintiff's right to reasonable, adequate, and competent diabetic medical care and accommodation for a known serious medical need.[43]  This allegation, however, is no more than a conclusory statement.  Additionally, Plaintiff alleges he informed LeBlanc of the ongoing medical

---

[39] *Lozano v. Smith*, 718 F,2d 756, 768 (5th Cir. 1983).
[40] *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (citations omitted).
[41] *Evett v. Deep East Tex. Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003) (quoting *Thompkins*, 828 F.2d at 304); *see also Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor.").
[42] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotation marks and citation omitted).
[43] R. Doc. 23, ¶¶ 37; 132-133.

problems via a letter, so LeBlanc would have a "personal knowledge" of the conditions to which Plaintiff was being subjected.[44] Plaintiff allegedly informed the Warden,[45] also via letter, of his issues regarding medical care and relayed his fear that if the condition was not treated properly, he would lose his legs.[46] Plaintiff also alleges he requested, via letter, that Warden Cain intervene to stop the dangerous practices of medical personnel, including preparing syringes in advance of glucose checking.[47] None of these allegations is sufficient to establish that LeBlanc, Vannoy, or Falgout was personally and directly involved in the conduct, which allegedly deprived Plaintiff of a constitutional right. Further, Plaintiff does not make any specific factual allegations to indicate that LeBlanc, Vannoy, or Falgout had any part in creating the alleged unconstitutional policies or that any of these individuals breached an affirmative duty imposed by state law. To the contrary, Plaintiff alleges Dr. Lavespere, as Medical Director, was and is the policymaker who has maintained the complained of policies.[48] Accordingly, it is recommended that all § 1983 claims against LeBlanc, Vannoy and Falgout be dismissed with prejudice.

### 4. The Motion should be denied with regard to Plaintiff's § 1983 claims against Lamartiniere, Lavespere and Toce

In contrast, although Lamartiniere is named in her individual capacity as a policymaker who allegedly "deliberately refused to alleviate known constitutional violations committed by EMT personnel, nurse and other staff who were interfering with prescribed diabetes care—a serious medical need,"[49] according to the Complaint, Lamartiniere also directly informed Plaintiff of the decision to stop providing Plaintiff with skin treatment for dermatological symptoms

---

[44] R. Doc. 23, ¶ 72.
[45] In 2015, when the complaints were made, according to the Petition, Burl Cain was the Warden. Vannoy now holds this position. (R. Doc. 23, ¶ 82).
[46] R. Doc. 23, ¶ 82.
[47] R. Doc. 23, ¶ 90.
[48] R. Doc. 23, ¶ 129.
[49] R. Doc. 23, ¶ 134.

9

associated with diabetes.[50] Reading the Complaint in the light most favorable to Plaintiff, Plaintiff has stated sufficient facts at this juncture to indicate that Lamartiniere was personally involved with Plaintiff's treatment. Finally, with respect to Lavespere and Toce, Defendants do not argue that these individuals were not directly involved with treating Plaintiff. Thus, the inquiry turns to whether the Complaint includes sufficient allegations of deliberate indifference with regard to Lamartinere, Lavespere and Toce to survive a motion to dismiss.[51]

In order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must allege that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."[52] Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue.[53] Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action.[54] Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.[55] *Farmer* lays out both an objective prong, and a subjective prong.[56] The objective prong requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.'"[57] Second, under *Farmer's* "subjective" prong, plaintiffs must show that prison officials acted with a "sufficiently culpable state of mind."[58] The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his

---

[50] R. Doc. 23, ¶ 71.
[51] As noted *supra*, the standard for a motion for judgment on the pleadings is the same as the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).
[52] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985).
[53] *Estelle v. Gamble*, *supra*.
[54] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).
[55] *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994).
[56] *Id*. at 837.
[57] *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).
[58] *Id.*

10

complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[59] Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm.[60]

      Here, Plaintiff alleges that glucose monitoring, which was part of his treatment plan, was refused to him.[61] When Plaintiff was diagnosed with diabetes, he was taught to always check his glucose prior to an insulin injection to avoid overdosing. However, since Plaintiff was denied access to glucose monitoring,[62] he alleges he has been given the improper dosage of insulin twice, each time resulting in an overdose.[63] One overdose occurred on October 18, 2013, after which Plaintiff alleges he was incoherent for approximately four days.[64] Plaintiff also alleges he was effectively refused insulin injections because he was, at times, required to administer the insulin injections to himself, which he was unable to do because of a combination of poor eyesight and dim lighting and because he never received training in how to administer the injections.[65] These insulin injections were a part of his known treatment regimen. As a result of his inability to administer the injection, Plaintiff alleges he "suffered many times from hyperglycemia, mental confusion, various stages of coma and unconsciousness, profuse sweating, agitation and other known objective warning signs of diabetic emergency."[66] At other times, Plaintiff has been unable

---

[59] *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), *quoting Estelle v. Gamble*, *supra*.
[60] *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993).
[61] Liberally construing Plaintiff's allegations, it appears as though glucose monitoring prior to insulin injections and diet restrictions may have been ordered as part of his treatment plan. (R. Doc. 23, ¶¶ 2; 127). Plaintiff specifically alleges that he has "been refused prescribed diabetes treatment in these ways." (R. Doc. 23, ¶ 25).
[62] R. Doc. 23, ¶ 7.
[63] R. Doc. 23, ¶¶ 53-56.
[64] R. Doc. 23, ¶ 56.
[65] R. Doc. 15, ¶ 14; R. Doc. 23, ¶¶ 52-53.
[66] R. Doc. 23, ¶¶ 11-13; 22.

11

to access his insulin injections, and thus, they have been effectively refused, because, due to diabetic neuropathy, he is unable to walk to the treatment center to receive his injection.[67]

In addition, Plaintiff has made complaints regarding his diet, including the inadequacy of diabetic snacks.[68] He alleges that he has already suffered at least five hypoglycemic attacks as a result of being denied adequate diabetic snacks at times they were required.[69] Plaintiff also alleges that he has been refused treatment for complications arising as a result of his diabetes. Specifically, that he has not been treated for diabetic peripheral neuropathy despite complaints and his dermatological disorders are not being treated.[70] The above factual allegations state a claim for relief for deliberate medical indifference as adequate medical treatment and nutrition are clearly established rights and Plaintiff's allegations, if proved, would establish a violation of these clearly established rights.

### D. Plaintiff has stated a claim for relief under the ADA against LeBlanc and Vannoy

Plaintiff has also invoked the provisions of the ADA in both his original and amended Complaints. Prisoners may bring claims against their jailors for disability discrimination under Title II of the ADA, which prohibits discrimination by public entities.[71] Because the term "public entity" in Title II does not include individuals, individual defendants cannot be held personally liable for violations of Title II of the ADA.[72] However, since Plaintiff named Vannoy, the Warden

---

[67] R. Doc. 23, ¶¶22; 26. The treatment center at LSP is approximately two-thirds of a mile from Plaintiff's current dormitory, which results in a roundtrip of approximately one and one-third miles. (R. Doc. 23, ¶ 40).
[68] R. Doc. 23, ¶ 126.
[69] R. Doc. 23, ¶ 86. *See Jones v. Texas Department of Criminal Justice*, 880 F.3d 756 (wherein the Fifth Circuit recently held that the refusal of prison personnel to provide a diet appropriate for a diabetic when that diet has been ordered by the attending medical professional constitutes deliberate indifference to serious medical needs). It is unclear based on the pleadings what, if any, diet has been "prescribed," but Plaintiff does state that he received treatment instructions at the time he was diagnosed with diabetes that related to, among other things, the diet he should consume. (R. Doc. 23, ¶ 127).
[70] Plaintiff specifically states that he suffers from "long-term diabetic complications from lack of care." (R. Doc. 23, ¶ 20).
[71] *Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 209–10, (1998).
[72] *Walker v. Snyder,* 213 F.3d 344, 347 (7th Cir. 2000), *abrogated on other grounds by Board of Trustees v. Garrett,* 531 U.S. 356, 374 n. 9, (2001).

12

of LSP, as a Defendant in his official capacity, this Court construes this as a claim against a public entity, namely, LSP.[73] Similarly, this Court construes the claim against LeBlanc, the Secretary of the Department of Corrections, as a claim against the Department of Corrections, a public entity.[74] However, to the extent claims arising under the ADA are made against Falgout, Lamartiniere, Lavespere, and Toce, those claims are dismissed, as these Defendants are not public entities and are not the head of any public entity of which Plaintiff is complaining.

Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[75] A plaintiff must first establish a prima facie case of discrimination before relief under the ADA can be considered. To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he has a qualifying disability; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and, (3) that such exclusion, denial of benefits, or discrimination is because of his disability.[76] A plaintiff asserting a private cause of action for violations under the ADA may only recover compensatory damages upon a showing of intentional discrimination.[77] Punitive damages are unavailable.[78]

---

[73] Since *pro se* complaints are to be liberally construed, courts have found that naming a warden of the institution where the prisoner is being held is sufficient to state a claim against the public entity, since a suit against an individual in his or her official capacity is in actuality a suit against the State itself. *See O'Quin v. Gautreaux*, 14-98 (M.D. La. March 31, 2015), 2015 WL 1478194. *See also Redding v. Georgia*, 12-174 at *3 (Oct. 9, 2012), 2012 WL 5386147. Accordingly, we construe the ADA portion of this Complaint to be against LSP, as an entity.
[74] For the reasons set forth above, since this claim could have arguably been brought against the Department of Corrections, arguing by extension, naming the Secretary of that agency is sufficient to name the "public entity." *See Redding*, 12-174 at *3.
[75] 42 U.S.C. § 12132.
[76] *Hale v. King,* 642 F.3d 492, 499 (5th Cir. 2011).
[77] *Delano–Pyle v. Victoria, County, TX,* 302 F.3d 567, 575 (5th Cir. 2002).
[78] *Barnes v. Gorman,* 536 U.S. 181, 189–90, (2002).

13

First, to demonstrate a qualifying disability, a plaintiff must show he has "a physical or mental impairment that substantially limits one of more of the major life activities of such individual."[79] Major life activities are defined in two ways. First, major life activities include, but are not limited to "seeing . . . walking, standing, lifting, bending . . . and working."[80] Second, a major life activity includes "the operation of a major bodily function," which includes, but is not limited to "the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."[81] Here, Plaintiff contends he is unable to walk "due to severe diabetic neuropathy, swelling, and leg irons."[82] Plaintiff also alleges he "suffers excruciating headaches, swelling of the lower extremities, untreated pain, and significant diminution of eyesight and has been denied" accommodations for these disabilities.[83] Walking and seeing are clearly included in the statute's definition of major life activity. Accordingly, based upon these allegations, Plaintiff has sufficiently alleged a qualifying disability.

Plaintiff has also made adequate allegations that he is being denied benefits or otherwise being discriminated against. Plaintiff has alleged he is often unable to walk and has been refused assistance or accommodations and is therefore unable to receive necessary medications and meals.[84] The Department of Corrections and LSP are the entities responsible for providing these necessities to Plaintiff and are responsible for providing accommodations to prisoners who demonstrate a need for such accommodations. Despite Plaintiff's alleged disability and inability to walk, Plaintiff alleges that he has not been provided adequate accommodations and seeks

---

[79] *Nottingham v. Richardson*, 499 Fed. App'x. 368, 376 (5th Cir. 2012); 48 U.S.C. § 12102(1)(A). In the alternative, a plaintiff may show a record of a mental or physical impairment or that he has been regarded as having such an impairment.
[80] 48 U.S.C. § 12102(2)(A).
[81] 48 U.S.C. § 12102(2)(B).
[82] R. Doc. 23, ¶ 22.
[83] R. Doc. 23, ¶ 42.
[84] R. Doc. 15, ¶ 14; R. Doc. 23, ¶¶22, 26, 52-53.

14

injunctive relief to obtain appropriate accommodations.[85] Likewise, Plaintiff alleges he is unable to administer injections to himself due to poor eyesight, and the Department of Corrections and LSP have not provided the alleged necessary accommodations to ensure Plaintiff receives his insulin. Finally, based on Plaintiff's allegations, the sole reason for his exclusion from obtaining basic life necessities is due to his disability. But-for Plaintiff's inability to walk and/or poor eyesight, and the lack of accommodations, he would be able to obtain meals and medications. Though Plaintiff may ultimately not succeed on the merits of this claim, Plaintiff has made a sufficient showing with respect to his claims arising under the ADA to prevent dismissal of his claims at this juncture.

### E. Exercise of supplemental jurisdiction over Plaintiff's state law claims should be declined

Finally, Plaintiff has requested that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to address his state law medical malpractice claims against Dr. Lavespere and Dr. Toce. A district court is authorized to decline supplemental jurisdiction over such claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, based upon the record, it is appropriate for the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

### RECOMMENDATION

**IT IS RECOMMENDED** that the Court decline supplemental jurisdiction relative to Plaintiff's potential state law claims.

---

[85] R. Doc. 23, ¶¶177-178.

**IT IS FURTHER RECOMMENDED** that the Motion for Judgment on the Pleadings[86] be granted in part, dismissing with prejudice the plaintiff's § 1983 claims asserted against Defendants LeBlanc, Vannoy, and Falgout in their individual and official capacities.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims for monetary damages against Lamartiniere, Lavespere, and Toce in their official capacities be dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims for accommodations under the Americans with Disabilities Act against Falgout, Lamartiniere, Lavespere, and Toce be dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that the Motion for Judgment on the Pleadings be **OTHERWISE DENIED** and that this matter be referred to the Magistrate Judge for further proceedings in connection with Plaintiff's claim for monetary damages and declaratory and injunctive relief asserted against Lamartiniere, Lavespere, and Toce in their individual capacities for the alleged violations of the Plaintiff's constitutional rights through deliberate indifference to his serious medical needs and Plaintiff's claims regarding accommodations arising under the Americans with Disabilities Act against LeBlanc and Vannoy, as representatives of the Department of Corrections and Louisiana State Penitentiary, respectively.

Signed in Baton Rouge, Louisiana, on February 21, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[86] R. Doc. 36.