## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

MATT BANKS (#116002)  CIVIL ACTION NO.

VERSUS  16-649-JWD-EWD

JAMES M. LeBLANC, ET AL.

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 27, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| MATT BANKS (#116002) | CIVIL ACTION NO. |
| VERSUS | 16-649-JWD-EWD |
| JAMES M. LeBLANC, ET AL. | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendants, James LeBlanc, Darrell Vannoy, Stephanie Lamartiniere, Dr. Randy Lavespere, and Dr. Paul M. Toce.[1] The Motion is opposed. For the following reasons, it is recommended that Defendants' Motion be granted, and this action dismissed with prejudice.

## I. Background

*Pro se* Plaintiff Matt Banks ("Plaintiff"), an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, originally filed this action pursuant to 42 U.S.C. § 1983 against Secretary James M. LeBlanc ("LeBlanc"),[2] Warden Darrel Vannoy ("Vannoy"),[3] Assistant Warden Stephanie Lamartiniere ("Lamartiniere"),[4] the R.E. Barrow Treatment Center, and Chronic Illness Department alleging that his constitutional rights had been and were being violated through deliberate indifference to his serious medical needs related to Type II diabetes.[5] Plaintiff thereafter filed an Amended Complaint[6] and a Second Amended and Consolidated Complaint,[7] which supplemented and clarified his factual allegations. The amendments added the following

---

[1] R. Doc. 56.
[2] LeBlanc is named in his individual and official capacities as "final policy maker." (R. Doc. 23, ¶¶ 33; 132).
[3] Vannoy is named in his official capacity. (R. Doc. 23, ¶¶ 33; 133).
[4] Lamartiniere is named in her individual capacity. (R. Doc 23, ¶¶ 33; 134).
[5] R. Doc. 1.
[6] R. Doc. 15.
[7] R. Doc. 23.

defendants: LSP Medical Director Randy J. Lavespere ("Lavespere"),[8] Assistant Warden Tracy Falgout ("Falgout"),[9] and Dr. Paul M. Toce ("Toce")[10] and removed the R.E. Barrow Treatment Center and Chronic Illness Department.[11] Plaintiff alleges that the named prison officials were deliberately indifferent to his medical needs in violation of the Eighth Amendment in treating Plaintiff's diabetes and associated complications.[12] Plaintiff also asserts a claim for "ADA accommodations" based on the Americans with Disabilities Act ("ADA").[13] He seeks monetary damages and declaratory and injunctive relief.

Prior to the filing of the instant Motion, this Court granted in part a motion for judgment on the pleadings, which dismissed Plaintiff's § 1983 claims against LeBlanc, Vannoy, and Falgout in their individual and official capacities, claims for monetary damages against Lamartiniere, Lavespere, and Toce in their official capacities, and claims for accommodations under the Americans with Disabilities Act against Falgout, Lamartiniere, Lavespere, and Toce.[14] Accordingly, the remaining claims are Plaintiff's § 1983 claims for monetary damages, declaratory and injunctive relief against Lamartiniere, Lavespere, and Toce in their individual capacities and Plaintiff's claims for failure to accommodate arising under the ADA against LeBlanc and Vannoy as representatives of the Department of Corrections and Louisiana State Penitentiary, respectively.

## II. Law & Analysis

### A. Standard of Review

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact such that the moving party is entitled to

---

[8] Dr. Lavespere was named in his individual and official capacities. (R. Doc. 23, ¶¶ 33; 129).
[9] Falgout was named in his individual and official capacities. (R. Doc. 23, ¶¶ 33; 130).
[10] Dr. Toce was named in his individual and official capacities. (R. Doc. 23, ¶¶ 33; 131).
[11] R. Doc. 23, p. 5; R. Doc. 22.
[12] U.S. CONST. amend. VIII. (R. Doc. 23 ¶¶ 140-165).
[13] R. Doc. 23, ¶¶ 177-178,
[14] R. Docs. 42 & 44. The Court also declined to exercise supplemental jurisdiction over any potential state law claims.

judgment as a matter of law.[15] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show there is no such genuine issue of material fact.[16] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[17] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[18] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[19] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.[20] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and the court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[21] However, under Fed. Rule. Civ. Proc. 56(c), a party must cite to evidence or show that the materials cited do not support the presence or absence of a dispute.

---

[15] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[16] *Celotex Corp.*, 477 U.S. at 322.
[17] *Anderson*, 477 U.S. at 248.
[18] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[19] *Celotex Corp.*, 477 U.S. at 323.
[20] *Little*, 37 F.3d at 1075.
[21] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## B. Plaintiff's § 1983 Claims against Lamartiniere, Lavespere, and Toce

In order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must demonstrate that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."[22] Whether the plaintiff has received the treatment or accommodation that he believes he should have is also not sufficient absent exceptional circumstances.[23] Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action.[24] Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment.[25] *Farmer* lays out both an objective prong, and a subjective prong.[26] The objective prong requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.'"[27] Second, under *Farmer's* "subjective" prong, plaintiffs must show that prison officials acted with a "sufficiently culpable state of mind."[28] The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[29] Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm.[30]

Defendants first contend Plaintiff has failed to demonstrate deliberate medical indifference because he has failed to demonstrate that Defendants refused to treat him, ignored his complaints,

---

[22] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985).
[23] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted).
[24] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).
[25] *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994).
[26] *Id*. at 837.
[27] *Id*. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).
[28] *Id.*
[29] *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), *quoting Estelle v. Gamble*, *supra*.
[30] *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

intentionally treated him incorrectly, or engaged in any conduct that reveals a wanton disregard for his serious medical needs.[31] To the contrary, Defendants have provided medical records documenting the extensive treatment Plaintiff has received for his complaints. The record, as a whole, is replete with evidence that Plaintiff was consistently treated. Additionally, throughout the record are innumerable instances in which Plaintiff was offered treatment but refused same.[32]

Plaintiff's claims several instances of deliberate medical indifference as follows:[33] 1) Plaintiff was denied glucose monitoring prior to every insulin injection, which Plaintiff avers is a necessary part of his treatment.[34] 2) Plaintiff was effectively refused insulin injections, a part of his known treatment regiment, for various reasons, including inability to administer the insulin injections to himself.[35] As a result of his alleged inability to administer the injection, Plaintiff contends he "suffered many times from hyperglycemia, mental confusion, various stages of coma and unconsciousness, profuse sweating, agitation and other known objective warning signs of diabetic emergency."[36] Plaintiff also complains that he has been effectively refused insulin injections because, due to diabetic neuropathy, he is unable to walk to the treatment center to receive his injection.[37] 3) Plaintiff was denied adequate and timely diabetic snacks.[38] 4) Plaintiff was refused treatment for diabetic peripheral neuropathy and dermatological disorders arising as

---

[31] R. Doc. 56-1, p. 9.
[32] Plaintiff makes the conclusory allegation that refusals were filled out to relieve workers of their obligation to provide treatment. Plaintiff provides no support for this allegation. As discussed below, Plaintiff's claims of effective denial of diabetic treatment that have been labeled as a refusal to accept care fail as a matter of law. *See infra* Section B.2.
[33] To the extent Plaintiff complains of not being assigned "patient status," the record is devoid of documentation to indicate that Plaintiff should be assigned patient status. Rather, the record reflects that Plaintiff is considered a "patient" but does not have all the privileges offered in his dormitory because he does not qualify for same. (R. Doc. 56-4, p. 3).
[34] R. Doc. 23, ¶¶ 2; 127. Plaintiff specifically alleges that he has "been refused prescribed diabetes treatment in these ways." R. Doc. 23, ¶ 25.
[35] R. Doc. 15, ¶ 14; R. Doc. 23, ¶¶ 52-53.
[36] R. Doc. 23, ¶¶ 11-13; 22. As discussed below, there is no documentation in the record to support these assertions.
[37] R. Doc. 23, ¶¶22; 26. The treatment center at LSP is approximately two-thirds of a mile from Plaintiff's current dormitory, which results in a roundtrip of approximately one and one-third miles. (R. Doc. 23, ¶ 40).
[38] R. Doc. 23, ¶ 126.

5

a result of his diabetes.[39] Based on the evidence presented, each of these allegations of deliberate indifference fails for the reasons set forth below.[40]

**1. Glucose Testing**

Plaintiff is of the opinion that his glucose should be checked prior to every insulin injection.[41] According to records provided by Defendants, Plaintiff was prescribed accu-checks (glucose level checks) prior to his morning and evening insulin injections for a period of three months beginning on March 10, 2014,[42] and again on October 19, 2015.[43] Further, a review of Plaintiff's medication administration charts from April 2014 through August 2016 demonstrates that Plaintiff's glucose *was* checked prior to nearly every injection.[44] Whether glucose testing is required prior to every injection is a matter of medical discretion, and though the policy of not requiring an accu-check prior to every insulin injection may fall below the optimal standard of

---

[39] Plaintiff specifically states that he suffers from "long-term diabetic complications from lack of care." (R. Doc. 23, ¶ 20). In Plaintiff's Opposition, he attaches, in support of his Opposition, medical records documenting neck and back pain, but in Plaintiff's Complaint, he did not make complaints of neck or back pain. Accordingly, these complaints are not discussed, as they are not before this Court. Similarly, Plaintiff raises for the first time in his Opposition that he has suffered harsh side effects from his insulin regimen due to the type of insulin he has been prescribed. (R. Doc. 78, p. 3). This issue is not properly before the Court as it is being raised for the first time in Plaintiff's Opposition, and therefore, the Court pretermits any further discussion on this issue. (*See Fields v. Department of Public Safety*, Civil Action No. 11-101, 2014 WL 5801460 at n. 2 (M.D. La. Nov. 7, 2014) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave. A party may not amend her complaint by raising new arguments in her brief in opposition to a motion for summary judgment; rather, the party must bring a motion to amend the complaint if she wishes to raise a new claim").
[40] Because there is no genuine issue of fact that Plaintiff has failed to meet his burden of establishing deliberate indifference, the Court need not fully examine the qualified immunity defense.
[41] R. Doc. 78, p. 3. Plaintiff does not provide any evidence in support of his assertion that "standard care for diabetics receiving daily insulin injections requires ACCUChecks immediately prior to injection to prevent hypoglycemia if the blood sugar is too low." (R. Doc. 78-1, p. 39) Plaintiff also avers that he has been given too high a dose of insulin on at least two occasions but fails to provide any support for this assertion.
[42] R. Doc. 56-11, p. 155.
[43] R. Docs. 56-4, pp. 2-3; 56-11, p. 68.
[44] R. Doc. 56-12, pp. 139-161. At most, throughout this entire period, Plaintiff's glucose was not checked prior to only 41 injections of the over 500 injections Plaintiff received—a rate of over ninety percent.

care, it is well established that neither allegations of malpractice nor disagreement with the level of care provided rise to the level of deliberate indifference that is actionable under § 1983.[45]

The Fifth Circuit has concluded that failing to order glucose tests, or "fingerstick tests," prior to insulin injections does not, *per se*, amount to deliberate indifference.[46] In determining that the lack of glucose testing did not constitute deliberate indifference, the Fifth Circuit examined the prison's overall management of the plaintiff's diabetes.[47] Here, Plaintiff's glucose was frequently checked prior to injections, and further checking was deemed unnecessary by medical personnel.[48] Further, there is no indication in the records that Plaintiff has ever suffered from hypoglycemia as a result of being given an improper insulin dose.[49] In instances where Plaintiff felt as though his blood sugar was "off" he was able to request an emergency sick call and was treated, as demonstrated by the record.[50] Plaintiff was examined on September 28, 2016. The records of this examination indicate that Plaintiff was non-compliant with his insulin regimen. The records further indicate that Plaintiff's insulin regimen was refined, his diet was modified as treatment for his diabetes, numerous tests were ordered, Plaintiff was given a referral for his annual foot exam (related to his diabetes), and a six-month follow-up appointment was ordered.[51] Plaintiff was not denied medical treatment with respect to glucose monitoring and insulin injections; rather, he

---

[45] *Baughman v. Garcia*, 254 F.Supp.3d 848, 871-72 (S.D. Tex. 2017) (opining that a policy, which provided for glucose checks at the prison medical official's discretion, was not a sufficient basis for a claim of deliberate indifference even if that policy fell below the optimal standard of care for diabetes).
[46] *Baughman v. Seale*, 761 Fed.App'x. 371, 379-81 (5th Cir. 2019).
[47] *Id.* at 380.
[48] R. Doc. 56-4, p. 3 ("Accu-checks are not performed on every diabetic patient because it creates an unnecessary burden on the system to do unnecessary testing. Twice daily CBGs are only used for fine tuning insulin doses and acute medical issues, but Plaintiff never got to the stage where it was a requirement for him").
[49] R. Doc. 56-4, p. 3.
[50] *See, e.g.*, R. Docs. 56-10, p. 155; 56-11, p. 55.
[51] R. Doc. 56-11, pp. 11-13.

simply disagreed on the method of treatment. Disagreement with a treatment regimen is not sufficient to establish a claim of deliberate indifference.[52]

### 2. Effective Denial of Diabetic Treatment

With respect to Plaintiff's complaints of effective denial of diabetic treatment, this Court is not persuaded that the acts and omissions to which Plaintiff points rise to the level of deliberate indifference.[53] Deliberate indifference entails more than mere negligence and must be more than a medical judgment call or an inadvertent failure to provide medical care.[54] An inmate who receives adequate medical care but disagrees with the mode of treatment has not established deliberate indifference, as "[t]he Eighth Amendment does not guarantee an inmate his choice of treatment."[55] Further, courts have found that either requiring self-administration or not allowing self-administration is a matter of medical discretion and requiring self-administration does not rise to the level of deliberate indifference.[56] Here, Plaintiff disagrees with the manner in which Plaintiff's insulin is administered, which does not rise to the level of deliberate indifference.[57]

---

[52] *Baughman*, 254 F.Supp.3d at 871-72.
[53] In Plaintiff's Complaint, he notes one instance of "refusal" of medical care. (*See* R. Doc. 23 ¶ 100). Plaintiff alleges an EMT (not a Defendant) refused to accept Plaintiff's sick call on October 16, 2015. In Opposition to the Motion for Summary Judgment, Plaintiff included a sick call request that was filled out by him with no other notations. (*See* R. Doc. 78-2, p. 62). First, the EMT who allegedly refused to treat Plaintiff is not a named Defendant. Second, the record provided in support of this assertion is insufficient to demonstrate that Plaintiff was refused medical care. Further, the records indicate that Plaintiff was treated for other complaints on the same day as well as days surrounding the alleged refusal to treat. (*See* R. Doc. 78-2, p. 63 (treatment on November 4, 2015), p. 66 (treatment on October 16, 2015), p. 65 (treatment on October 19, 2015).
[54] *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Murrell v. Bennett,* 615 F.2d 306, 310 n. 4 (5th Cir.1980).
[55] *Leonard v. Daniel*, 2016 WL 1274448 at *7 (E.D. Tex. Feb. 24, 2016) (*citing Sama v. Hannigan*, 669 F.3d 585, 590–91 (5th Cir. 2012); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).
[56] *See Parker v. Davis*, Civil Action No. 15-cv-271, 2017 WL 1227948, at *5 (M.D. Ga. Mar. 2, 2017) *report and recommendation adopted*, Civil Action No. 15-271, 2017 WL 1217179 (M.D. Ga. Mar. 31, 2017) (wherein the court found that a claim of lack of assistance in administering insulin injections resulting in difficulty controlling diabetes was insufficient to sustain a claim for deliberate indifference). *Compare Thurston v. Pallito*, Civil Action No. 13-316, 2015 WL 1097377, at *15 (D. Vt. Jan. 13, 2015), *report and recommendation adopted in part*, No. 13-316, 2015 WL 1101157 (D. Vt. Mar. 11, 2015) (finding a plaintiff's complaint that he was effectively denied insulin injections because he was not allowed to self-administer, at most, disagreement regarding treatment, which did not rise to the level of deliberate indifference. Insulin was *available* to the plaintiff if he consented to administration by prison staff).
[57] *Leonard v. Daniel*, 2016 WL 1274448 at *7 (E.D. Tex. Feb. 24, 2016) (*citing Sama v. Hannigan*, 669 F.3d 585, 590–91 (5th Cir. 2012); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). Although Plaintiff also relies on a notation from Nurse Carroll, dated 12/6/16, stating her belief that Plaintiff was not capable of safely self-administering

Plaintiff also avers he was not educated on how to inject insulin, but the record establishes otherwise.[58] On April 29, 2014, Plaintiff signed a "Diabetes Education Verification" verifying that he was educated on self-injecting insulin.[59] Plaintiff argues that his mental disabilities[60] prevent him from self-injecting,[61] but when it was apparent that Plaintiff could not self-inject, on at least two occasions, it was ordered that he be brought to the ATU for his injections.[62] Plaintiff was not denied treatment and, according to the records, his refusals to self-inject were met with new orders for Plaintiff to receive his injections at the ATU. At least two options for insulin injections were provided to Plaintiff: self-injection or injections at the ATU, yet Plaintiff effectively refused both. He refused self-injections due to his alleged fear of needles and he refused treatment at the ATU because he refused to walk there.[63] The evidence shows that Defendants have attempted to cooperate with Plaintiff and to be responsive to Plaintiff's requests, which is well within the bounds of care required by the Eighth Amendment. Plaintiff's continued disagreement with the ways in which insulin is offered to him does not constitute deliberate indifference.[64]

---

insulin injections (R. Doc. 56-10, p. 150), it is undisputed that Plaintiff was transferred from Camp D to the main prison that day so he would be closer to the assessment triage unit ("ATU") where his injections would be administered by medical staff. R. Doc. 56-2, ¶¶39 & 6.

[58] R. Doc. 56-11, p. 152.

[59] R. Doc. 56-11, p. 152.

[60] Though not specifically at issue in this action, this Court notes that Plaintiff has also been treated for his various mental health issues, as is documented throughout the record. Further, though Plaintiff alleges in his Opposition that he is unable to exercise individual medical decisions, (*see* R. Doc. 78, p. 17), this statement is unsupported by the record. Nowhere is it indicated that Plaintiff has been deemed unable to make medical decisions.

[61] R. Doc. 78, pp. 4 & 11.

[62] R. Docs. 56-10, p. 148; 56-11, p. 151.

[63] As discussed *infra* in Section B. 4., Plaintiff was also treated for his complaints related to his alleged inability to walk to the ATU, although there is no evidence in the medical records to establish that Plaintiff was not ambulatory. Plaintiff also alleged in his Complaint that he would refuse to accept insulin injections because he believed the syringes were "pre-filled" and had been left out for a dangerous amount of time. No evidence has been produced to support this assertion; rather, the evidence submitted indicates that each diabetic inmate is given the amount of insulin deemed appropriate for that individual. (*See* R. Doc. 56-3, p. 3). Inmates are not given pre-filled syringes of insulin. (*See* R. Doc. 56-3, p. 3).

[64] *See Leonard v. Daniel*, 2016 WL 1274448 at *7 (E.D. Tex. Feb. 24, 2016) (*citing Sama v. Hannigan*, 669 F.3d 585, 590–91 (5th Cir. 2012); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)).

### 3. Diabetic Snacks

Plaintiff's complaints regarding untimeliness and inadequacy of diabetic snacks fare no better under a deliberate indifference analysis. Due to Plaintiff's condition, he was prescribed a diabetic diet including evening diabetic snacks. The adequacy of these snacks is a matter or professional judgment. To the extent the snacks have been untimely, there is no indication that this untimeliness was a result of anything more than mere negligence. Plaintiff has not alleged that his snacks were untimely or inadequate as a result of a conscious or callous indifference to Plaintiff's medical needs.[65] Further, Plaintiff has failed to put forth evidence that Defendants acted with a sufficiently culpable state of mind regarding the adequacy of Plaintiff's snacks, and regarding the timing of snacks. Mere delay is insufficient to state a claim for deliberate indifference without resulting substantial harm.[66] Nowhere in the records is there any evidence of substantial harm as a result of untimely or inadequate diabetic snacks. Accordingly, Plaintiff has also failed to carry his burden on this claim.

### 4. Treatment of Conditions Arising from Diabetes

With respect to Plaintiff's claims for non-treatment of conditions arising from his diabetes, specifically, diabetic neuropathy (self-diagnosed), lower extremity pain and swelling, and diminished eyesight, Plaintiff has also failed to carry his burden of showing deliberate indifference. First, regarding Plaintiff's complaints of neuropathy and lower extremity pain and swelling, the records indicate Plaintiff has been treated for these complaints, simply not to his liking. Though Plaintiff often complained of swelling in his legs, the medical records indicate there was no

---

[65] *See Perryman v. Philbin*, No. 7:12-CV-155 HL, 2013 WL 4434227, at *2–3 (M.D. Ga. Aug. 15, 2013) (holding that a plaintiff failed to state a claim for deliberate indifference when he alleged that he was not given his "accu-check and insulin" at the correct times).

[66] *Farmer*, 511 U.S. at 839–30; *Mendoza*, 989 F.2d at 195.

swelling.[67] Yet despite the lack of objective symptoms, prison personnel treated Plaintiff for his subjective complaints.[68] On May 9, 2015, Plaintiff complained of pain and swelling in his left knee and was treated and prescribed 400 mg ibuprofen.[69] On May 14, 2015, Plaintiff complained of spasms from his knees to his feet, foot pain, and leg swelling.[70] As a result of these complaints, Plaintiff was prescribed Pyridoxine for one month.[71] On September 28, 2016, Plaintiff was referred to the podiatry clinic for his annual foot exam, which he received as a matter of course due to his diabetes.[72] On June 1, 2017, Plaintiff complained of dry skin and was prescribed Clotrimazole for same.[73] On August 25, 2017, Plaintiff again complained of bilateral neuropathic foot pain.[74] He had been prescribed Elavil for this pain at his last doctor's visit but had not taken the medications.[75] Plaintiff requested that his Elavil be given to him during his afternoon pill call, and the doctor was amicable and changed the timing of Plaintiff's Elavil prescription to be given at Plaintiff's afternoon pill call.[76] Further, Plaintiff was moved to a cell closer to the ATU, so Plaintiff would have a shorter distance to walk for his medications and insulin injections.[77] Plaintiff was also prescribed special orthopedic shoes to treat his complaints relative to his alleged difficulty walking.[78]

---

[67] R. Doc. 78-3, pp. 1-7. Swelling in Plaintiff's knees was noted on a few occasions and was treated. Further, though Plaintiff avers he cannot walk, throughout the medical records, it is indicated that Plaintiff is generally able to walk without difficulty (*i.e.*, is ambulatory). (*See e.g.*, R. Docs. 78-3, pp. 2-4 & 10.
[68] R. Doc. 78-3, pp. 1-7.
[69] R. Doc. 56-11, p. 88.
[70] R. Doc. 56-11, p. 87.
[71] R. Doc. 56-11, p. 87.
[72] R. Doc. 78-3, p. 97.
[73] R. Doc. 56-10, p. 119.
[74] R. Doc. 56-11, p. 156.
[75] R. Doc. 56-11, p. 156.
[76] R. Doc. 56-11, p. 156.
[77] R. Doc. 56-10, p. 148.
[78] R. Doc. 56-10, p. 117.

In support of Plaintiff's argument that he was not treated for his "nerve pain,"[79] he cites to a request for medical care that occurred on January 12, 2017.[80] On this date, Plaintiff complained of "diabetes nerve pain."[81] Plaintiff was examined. No discoloration, swelling, or deformities were noted. Plaintiff was referred to a doctor for further evaluation, and he was thereafter prescribed new medications for his complaints.[82] Shortly thereafter, on February 2, 2017, Plaintiff was treated at a follow-up appointment.[83] Plaintiff was prescribed a straight cane along with other medications[84] to treat his various complaints and was referred to the podiatry clinic due to his continuing complaints of leg and foot pain.[85] Plaintiff's restraints were also modified.[86] The records demonstrate that Plaintiff has been treated for his subjective complaints of lower extremity pain.

With respect to Plaintiff's alleged diminished eyesight, he has been provided with annual examinations and has been prescribed three pairs of eyeglasses to improve his vision.[87] Plaintiff has also apparently been fixated on needing lotion, but based upon the records, Plaintiff's requests for lotion have been fulfilled.

In addition to the foregoing, Plaintiff's claims are questionable overall because, as the Fifth Circuit has stated that "[d]eliberate indifference is especially hard to show when the inmate was provided with ongoing medical treatment."[88] Here, more than 500 pages of medical records from

---

[79] R. Doc. 78, p. 3.
[80] R. Doc. 78-2, p. 105.
[81] R. Doc. 78-2, p. 105.
[82] R. Doc. 78-2, p. 105.
[83] R. Doc. 78-2, p. 110.
[84] A review of Plaintiff's medication list near the time the Complaint was filed shows that Plaintiff's various conditions were being treated with the following medications: Artificial Tears, Gemfibrozil (for high cholesterol), Insulin (for diabetes), Losartan (for high blood pressure), Metformin (for diabetes), Simvastatin (for high cholesterol), Acetaminophen (for pain), Loratadine (for allergies), docusate calcium (laxative). (R. Doc. 78-3, p. 95). Plaintiff had also previously been prescribed Naproxen for pain. (R. Doc. 78-3, p. 104).
[85] R. Doc. 78-2, pp. 106-110.
[86] R. Doc. 56-13, p. 123.
[87] R. Doc. 56-4, pp. 3-4.  *See also*, R. Doc. 78-4, pp. 72-77.
[88] *Fails v. DeShields*, 349 Fed.App'x. 973, 976 (5th Cir. 2009).

only a few years demonstrate Plaintiff's ongoing medical treatment for the variety of conditions about which he complains. Plaintiff has failed to demonstrate that any of the Defendants have refused to treat him, ignored his complaints, intentionally treated him incorrectly or engaged in any similar conduct that would evince a wanton disregard for any serious medical need.[89] To the contrary, Plaintiff's medical records demonstrate that, not only is Plaintiff being treated, but prison personnel have been accommodating to Plaintiff's numerous requests.[90]

### C. Plaintiff's ADA Claims against LeBlanc and Vannoy

Regarding ADA accommodations, prisoners may bring claims against their jailors for disability discrimination under Title II of the ADA, which prohibits discrimination by public entities.[91] Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[92] A plaintiff must first establish a prima facie case of discrimination before relief under the ADA can be considered. To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he has a qualifying disability; (2) that he is being excluded from

---

[89] The medical records in this matter show consistent treatment. The only thing in the record, which contests treatment, is Plaintiff's Complaint. This Court could consider Plaintiff's Second Amended and Consolidated Complaint as competent summary judgment evidence, (*see King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) (verified complaints may potentially be considered as competent summary judgment evidence to the extent the complaint comports with the affidavit requirements of Rule 56). Rule 56, in turn, requires that affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence," and make the allegations under penalty of perjury. Fed. Rule Civ. P. 56(c)(4); *King*, 31 F.3d at 346), but even considering the Complaint as competent summary judgment evidence, Plaintiff fails to defeat summary judgment. The Fifth Circuit has "repeatedly held that self-serving affidavits, without more, will not defeat a motion summary judgment." *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed. Appx. 306, 309 (5th Cir. 2011). Plaintiff's self-serving statements in his Complaint are not the type of probative evidence required to defeat summary judgment. *See U.S. v. Lawrence*, 276 F.3d 193 (5th Cir. 2001). Accordingly, when faced with the medical records, which document consistent treatment, Plaintiff's self-serving Complaint is not enough to defeat summary judgment.

[90] Because summary judgment should be granted on the merits, whether Plaintiff's claims are prescribed is not addressed.

[91] *Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 209–10, (1998). As noted in this Court's previous report and recommendation, the Court has construed the claims against LeBlanc and Vannoy as claims against the entities the represent, the Department of Public Corrections and LSP, respectively. (R. Doc. 42).

[92] 42 U.S.C. § 12132.

participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and, (3) that such exclusion, denial of benefits, or discrimination is because of his disability.[93] A plaintiff asserting a private cause of action for violations under the ADA may only recover compensatory damages upon a showing of intentional discrimination.[94] Punitive damages are unavailable.[95]

First, to demonstrate a qualifying disability, a plaintiff must show he has "a physical or mental impairment that substantially limits one of more of the major life activities of such individual."[96] Major life activities are defined in two ways. First, major life activities include, but are not limited to "seeing . . . walking, standing, lifting, bending . . . and working."[97] Second, a major life activity includes "the operation of a major bodily function," which includes, but is not limited to "the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."[98] The physical impairment Plaintiff has alleged is diabetic neuropathy, swelling of the lower extremities, pain, headaches, and diminution of eyesight.[99] Though walking and seeing are clearly included in the statute's definition of a major life activity, Plaintiff has failed to put forth any competent summary judgment evidence that he actually suffers from any impairment that substantially limits either of these major

---

[93] *Hale v. King,* 642 F.3d 492, 499 (5th Cir. 2011).
[94] *Delano–Pyle v. Victoria, County, TX,* 302 F.3d 567, 575 (5th Cir. 2002).
[95] *Barnes v. Gorman,* 536 U.S. 181, 189–90, (2002).
[96] *Nottingham v. Richardson*, 499 Fed. App'x. 368, 376 (5th Cir. 2012); 48 U.S.C. § 12102(1)(A). In the alternative, a plaintiff may show a record of a mental or physical impairment or that he has been regarded as having such an impairment.
[97] 48 U.S.C. § 12102(2)(A).
[98] 48 U.S.C. § 12102(2)(B).
[99] R. Doc. 23, ¶¶ 22 & 42. Plaintiff appears to argue in his Opposition that his various mental impairments should also be considered qualifying disabilities. However, Plaintiff failed to raise this in his Complaint, and he has not shown that any of his diagnoses of mental illnesses impair any of his major life activities. In the Opposition Plaintiff argues that he is unable to make medical decisions, but the record demonstrates the opposite: Plaintiff is consistently able to request medical care when necessary. Accordingly, because Plaintiff failed to properly raise this claim before the Court (*see Fields*, *supra* at n. 41) and due to the lack of evidence supporting same, this Court pretermits any further discussion regarding any potential disability associated with Plaintiff's various mental illnesses.

14

life activities. As Plaintiff fails to demonstrate the first requirement of the statute, *i.e.*, that he has a qualifying disability, the Court need not analyze his ADA claim further.

Even assuming, however, that Plaintiff has a qualifying disability, Plaintiff cannot show that he has been denied benefits or that he was discriminated against. A comparative case is *Nottingham v. Richardson*.[100] In *Nottingham*, the plaintiff claimed a limited ability to walk.[101] Nottingham alleged that he was left on the floor of a transport van and not given the opportunity to use the restroom.[102] The Fifth Circuit held that "simply failing to attend to the medical needs" of disabled prisoners does not violate the ADA and that leaving Nottingham on the floor of the van did not have any connection to his disability.[103] Here, Plaintiff complains that his leg pain has not been sufficiently treated and that this has resulted in discrimination because he cannot walk to receive the various services and activities offered at LSP. These claims are merely deliberate indifference claims cast in a different light.[104] Plaintiff's core complaint is that his leg pains associated with diabetes have not been properly treated, which renders him unable to walk. Further, it appears as though prison personnel have attempted to accommodate Plaintiff's requests for additional assistance to ensure he received required care. As noted above, Plaintiff has been given the option to self-inject insulin or go to the ATU to receive his insulin injections. Plaintiff was moved closer to the ATU so he would not have to walk as far for treatment. As a result of Plaintiff's complaints regarding lower extremity pain, Plaintiff has been provided with numerous

---

[100] 499 Fed.App'x. at 377.
[101] *Id.* at 377.
[102] *Id.*
[103] *Id. quoting Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).
[104] Throughout the section of Plaintiff's Opposition regarding ADA accommodations, he reiterates his complaints regarding deliberate indifference framing each complaint as if the alleged denial of assistance in obtaining insulin, lack of diabetic snacks, etc. also constitute a violation of the ADA. Because failing to attend to medical needs does not violate the ADA, these claims are without merit.

forms of assistance, including a walking cane,[105] orthopedic shoes,[106] and modified restraints.[107] Plaintiff is also given numerous medications for treating his ailments; for example, Plaintiff has been prescribed lotion, pain medications, and medications to manage his diabetes, as well as supplements to help him live a healthier life, such as Omega 3 capsules.[108] Prison personnel have been responsive to Plaintiff's requests for assistance, and Plaintiff's grievance amounts to a complaint regarding the amount of assistance he has been given. There is simply no evidence of any action that rises to the level of an ADA violation on the record before the Court.

### III. Conclusion

The evidence presented demonstrates that Defendants have consistently treated Plaintiff for his various complaints. Plaintiff has failed to direct the Court to sufficient evidence to create a genuine issue of material fact as to whether Defendants Lamartiniere, Lavespere and Toce refused to treat Plaintiff, ignored his complaints, intentionally treated him incorrectly or engaged in any similar conduct that would evince a wanton disregard for any serious medical need. In his claims against Defendants LeBlanc and Vannoy, Plaintiff has not presented sufficient evidence of a qualifying disability, such that any of his claims would properly be considered under the ADA. Rather, Plaintiff's complaints regarding his inability to walk and diminished eyesight are simply claims of deliberate indifference painted in a different light. Moreover, other than Plaintiff's self-serving and unsupported statements, the record shows Defendants have attempted to accommodate whatever limitations Plaintiff may have. Accordingly, Plaintiff has not, as a matter of law, stated a claim under the ADA. As there are no genuine issues of material fact, Defendants Motion should be granted as a matter of law, and this action should be dismissed with prejudice.

---

[105] R. Doc. 56-13, p. 3.
[106] R. Doc. 56-10, p. 117.
[107] R. Doc. 56-13, p. 123.
[108] R. Docs. 56-13, pp. 10-12.

16

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED** and that this action be **DISMISSED WITH PREJUDICE**.

## ORDER

Considering the above recommendation, **IT IS ORDERED** that Plaintiff's pending Motion Requesting Appointment of Counsel[109] be and is hereby **DENIED**.

Signed in Baton Rouge, Louisiana, on August 27, 2019.

                                                  **ERIN WILDER-DOOMES**
                                                  **UNITED STATES MAGISTRATE JUDGE**

---

[109] R. Doc. 47.